781 F.2d 1450
 Moises GARCIA-MIR, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
Edwin MEESE, III, et al., Defendants-Appellants, Cross-Appellees.
Rafael FERNANDEZ-ROQUE, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
Edwin MEESE, III, et al., Defendants-Appellants, Cross-Appellees.
 Nos. 86-8010, 86-8011.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 21, 1986.
 
 Nina R. Hickson, Asst. U.S. Atty., Sharon Douglas Stokes, Atlanta, Ga., Lauri Steven Filppu, Deputy Dir., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants, cross-appellees.
 William Thompson, Atlanta Legal Aid, Dale Schwartz, Myron Kramer, Deborah Ebel, David Webster, Atlanta, Ga., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before FAY, JOHNSON and CLARK, Circuit Judges.
 MEMORANDUM AND ORDER
 JOHNSON, Circuit Judge:
 
 
 1
 These cases come before us on emergency motion by the Attorney General of the United States for a stay of an Order of the United States District Court for the Northern District of Georgia, issued on November 25, 1985, Fernandez-Roque v. Smith, 622 F.Supp. 887 (N.D.Ga.1985). The Attorney General also presents a non-emergency motion to summarily reverse the trial court's order. Because the issues raised in these two class action cases are identical, they will be considered together on this appeal. For the reasons explained herein, we DENY the Attorney General's motion for a stay of the district court's order to submit a plan for conducting hearings, and we GRANT the motion of the Attorney General and STAY the order of the trial court to the extent that it requires implementation of such plan pending resolution of the underlying merits of this case. The government's motion for a summary reversal is DENIED and it is ordered that this case be considered upon the merits with briefs and oral argument on an expedited basis.
 
 I.
 
 2
 This case was originally brought by a certified class of Mariel Cuban refugees ["the respondents"], who are neither mentally incompetent nor guilty of serious crimes committed in Cuba. They are currently being detained in the Atlanta Penitentiary. The respondents sought and obtained a court order directing the Attorney General to implement a plan providing for individualized hearings to determine if each alien is suitable for parole or is properly held pending efforts to return him or her to Cuba.
 
 
 3
 This case comes before us for the fourth time in four years.[1] In Fernandez-Roque v. Smith, 734 F.2d 576 (11th Cir.1984) ["Fernandez II "], this Court reversed the trial court's finding that these aliens had a constitutionally-based liberty interest which could be denied only after full hearing. We withheld judgment on and remanded two other questions: whether there might be some nonconstitutionally-based but nonetheless actionable liberty interest; and whether the detention of these respondents was violative of the principles of public international law. Id. at 582 n. 10.
 
 
 4
 Upon remand the trial court considered these questions and issued an order dated November 25, 1985, in which it found that the respondents had presented an actionable claim of denial of a protected liberty interest in violation of the guarantee of due process of law. Specifically, the trial court found that several actions taken and documents issued by the Executive Branch under the administration of President Jimmy Carter had the effect of extending an "invitation" to the class members to come to this country and concomitantly effected limitations on administrative discretion sufficient to create a protectable liberty interest in securing a parole hearing.
 
 
 5
 The trial court found that this liberty interest guaranteed each Cuban alien housed in the Atlanta facility a full hearing at which the government was required to provide evidence that the refugee "is likely to abscond, to pose a risk to the national security, or to pose a serious and significant threat to persons or property within the United States." Fernandez-Roque v. Smith, 622 F.Supp. at 901. This hearing was to be conducted consistent with procedural requirements that the government finds onerous--namely, provision of counsel, the right to call and compel attendance of witnesses, Fifth Amendment protection against adverse inferences drawn from refusal to offer self-incriminatory testimony, and a standard of proof requiring clear and convincing evidence to justify detention without parole. The trial court rejected the respondents' claims premised on public international law.
 
 
 6
 The Attorney General was directed to furnish within thirty days for the trial court's approval a plan for providing these detention hearings. Such hearings were ordered to begin no later than sixty days after the issuance of the November 25 Order. On December 24, 1985, upon the government's motion for a stay pending appeal, the district court extended its deadline for submitting a plan to January 24, 1986, and ordered that the detention hearings begin no later than February 24, 1986.
 
 
 7
 The government also moved the trial court to decertify the class of aliens in light of our opinion in Garcia-Mir I, where we held that "[d]ecisions regarding parole, asylum, and withholding of deportation must be made only after considering the particular circumstances of each individual's case ... therefore ... further class-wide treatment on these issues is inappropriate." 766 F.2d at 1487-88 n. 11. The trial court did not address this motion in its November 25 Order.
 
 II.
 
 8
 These cases present three questions: A) whether we should issue a stay, under Fed.R.App.P. 8(a), of the trial court's order to devise a plan to effectuate detention and parole hearings for these respondents consistent with the requirements of due process; B) whether we should also stay the implementation of that plan pending resolution of the underlying merits of the case; and C) whether the trial court's order should be summarily reversed on the merits.
 
 A. The Plan:
 
 9
 The Attorney General filed with this Court a motion for a stay of the district court's order of November 25, 1985. This motion followed the trial court's denial of a similar motion, on December 24, 1985, under Fed.R.Civ.P. 62. The trial court instead granted the government a thirty day extension in which to prepare and file its plan. Because the precise remedy sought here was denied below, this motion is properly filed under Fed.R.App.P. 8(a).
 
 
 10
 Our standard of review in cases of this sort is well-settled. We must always be diffident in interposing the power of an appellate court into the province of the trial court and its orders save upon full briefing and mature reflection by this Court. The grant of an emergency motion to stay the trial court's mandate is thus an exceptional response granted only upon a showing of four factors: 1) that the movant is likely to prevail on the merits on appeal; 2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay. Jean v. Nelson, 683 F.2d 1311, 1312 (11th Cir.1982) (per curiam ), see also, 11th Cir.R. 17(b)(1).
 
 
 11
 Ordinarily the first factor is the most important. A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous. In re Grand Jury Proceedings, 689 F.2d 1351, 1353 (11th Cir.1982) (per curiam ). But the movant may also have his motion granted upon a lesser showing of a "substantial case on the merits" when "the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay." Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981) (per curiam ), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).
 
 
 12
 1. The Likelihood of Success on Appeal.
 
 
 13
 The respondents here are "excludable aliens." In the eyes of the law they have not yet entered the country but are merely "on the threshold of initial entry." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953). "As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." Nishimura Ekiu v. United States, 142 U.S. 651, 660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892). Though this Court held, Jean v. Nelson, 727 F.2d 957, 968 (11th Cir.1984) (en banc ), that excludable aliens enjoy no constitutional protection with respect to the process of application for admission to this country, we were criticized by the Supreme Court for unnecessarily reaching that constitutional question. Jean v. Nelson, --- U.S. ----, ----, 105 S.Ct. 2992, 2998, 86 L.Ed.2d 664 (1985). We held subsequently that there was no constitutionally based liberty interest for these respondents. Fernandez II, 734 F.2d at 581-82.
 
 
 14
 The precise issue here, however, is whether there exists some nonconstitutionally based liberty interest entitled to the protection of due process. That is a question we have not decided, and do not decide today. We need only determine whether the government has demonstrated a probable likelihood that such rights are not deserving of protection.
 
 
 15
 A nonconstitutionally based liberty interest may be created by acts or rules "defining the obligations of the authority charged with exercising" that power. Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). More specifically, a liberty interest will be found where the government signals the existence of such right "by placing substantive limitations on official discretion" in the form of " 'particularized standards or criteria [to guide] ... decisionmakers.' " Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting Dumschat, 452 U.S. at 467, 101 S.Ct. at 2466 (Brennan, J., concurring)).
 
 
 16
 The trial court found that there exists a liberty interest in continued parole created by several statements by the President of the United States, and other officers of the Executive Branch, to the effect that the Mariel Refugees were invited to come to this country and would be welcomed "with open hearts and open arms." Whether it is possible for the President of the United States to create constitutionally protected liberty interests by means of the public statements of himself and his subordinates is at best an open question. It is also one with far-reaching implications best left for plenary consideration on appeal.
 
 
 17
 If that were the sole basis for the trial court's decision below, we might well find that the government had satisfied this first factor. It was not. Contrary to the assertion of the government, the trial court also found that the response of the Department of Justice evidenced the creation of a special legal status for the Cuban refugees, in that the refugees were permitted to journey to and disembark in this country without meeting the usual documentary requirements imposed by the Immigration and Naturalization Service.[2] The trial court found that this had the effect of "elevating" the Cubans over the legal status of other excludable aliens, thereby effecting a significant limitation on the discretion of the Attorney. 622 F.Supp. at 896-900.
 
 
 18
 At least one other court has endorsed similar reasoning. In United States ex rel. Paktorovics v. Murff, 260 F.2d 610 (2d Cir.1958), the court found that while the President alone lacked authority to create a legally enforceable right to enter this country, nonetheless an immigrant who travelled here upon an invitation issued "pursuant to the announced foreign policy of the United States as formulated by the President" and who was detained at Ellis Island was at the least entitled to a hearing before revocation of parole. Id. at 614. The President's invitation to a specific group of foreign nationals "effect[ed] a change in the status of [the immigrant] sufficient to entitle him to the [due process] protection of our Constitution." Id.
 
 
 19
 This presents an unusual legal question. Though the order below was founded on Paktorovics, that case is not a precedent of this Circuit and we have never passed on its holding. While expressing no opinion on the actual merits of the order below, there is, we think, a substantial likelihood that the discretionary limitations imposed on the conduct of the Attorney General here are not so extensive as to create a liberty interest. We find little evidence of the "particularized standards" to guide decisionmakers that demarks the creation of a liberty interest. But on the scant record and motions before us, and bearing in mind the extraordinarily high standard of review of motions for emergency stays, we are not persuaded that the possibility of error here is so high as to constitute clear error suggesting probable likelihood of success on appeal. Thus the government may have the relief it seeks here only if the other three "equities" tend strongly in its favor. Ruiz v. Estelle, 650 F.2d at 565.
 
 
 20
 2. Irreparable Injury to the Government.
 
 
 21
 The government has a weighty interest in the efficient administration of the immigration laws. Landon v. Plasencia, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). To the extent that the trial court's directive to prepare a plan for the conduct of parole hearings disturbs that effort, we must be concerned. The government's argument is that the trial court's requirement that hearings be held, at which the government must offer clear and convincing evidence to justify detention, places an excessive burden on the government due to the fact that medical and criminal records for most of these refugees are not available. This goes, at best, to the difficulties involved with implementing any plan the government might devise. It goes more properly to the underlying merits of requiring hearings. It has nothing to do with the injury following from the simple preparation on paper of a plan to carry out the trial court's directives. Accordingly the government's argument is misdirected. The trial court has clearly articulated the contours of the plan that it would consider to be adequate--i.e. a criminal-like hearing at which the protections of due process and against self-incrimination will be provided, where counsel is furnished, and where witnesses may be called, compelled to attend, and cross-examined. This appears to us to impose an injury virtually non-existent. It certainly does not rise to the level of "irreparable injury."
 
 
 22
 3. Substantial Injury to the Adverse Party.
 
 
 23
 There is, perhaps, no injury more substantial and less reparable than improper denial of the right to liberty. Here the question is whether, by staying the trial court's order to devise a plan capable of determining who shall be imprisoned and who shall be paroled, we would cause or further such deprivation. We believe there is little question but that we would. Should a panel of this Court affirm that the respondents are entitled to the hearings the trial court has ordered, the effectuation of that determination can only be expedited by having a plan drawn up and before the trial court for consideration and comment. The injury to the government is slight; the cost of more days, weeks, months, or even years in the penitentiary for those already held for five years is incalculable. We cannot fail to be moved by the fact that these refugees have been indefinitely incarcerated by a process that ignores the fundamental fact that they are human beings. The balance of equities here tilts strongly in favor of the respondents.
 
 
 24
 4. The Public Interest.
 
 
 25
 This factor is largely a variation on factor 2 discussed supra. The government argues with some vigor that withholding a stay in this case will jeopardize the "lives and safety of United States citizens...." The logic of this argument eludes us, for the issue here is merely whether a plan should be prepared in order to determine whether the respondents who are neither mentally incompetent nor criminals are being improperly held. We find little evidence that the public will suffer irreparable injury from the trial court's order that the government move ahead with the preparation of plans for a hearing.
 
 
 26
 In sum, we find that the government has failed to state a proper case justifying the extraordinary remedy of a stay of the trial court's order to prepare a plan. While the likelihood of success on the merits is substantial, that will not support a stay by this Court when the other three factors we must consider point so strongly in the other direction.
 
 B. Its Implementation:
 
 27
 Our analysis of this question is likewise governed by the four-part catechism we set forth in Section A.
 
 
 28
 1. The Likelihood of Success on Appeal.
 
 
 29
 The analysis we offered in Section A 1 is equally applicable here. The contours of a plan capable of effecting the guarantee of due process for excludable aliens is inextricable from the implementation of that plan, which the trial court intends to accomplish within thirty days of acceptance of the plan. We found a substantial likelihood that on appeal this Court would determine that there was no constitutionally protected liberty interest at stake. It is axiomatic, then, that there is a substantial likelihood that the plan need not be implemented. Thus, the success of the government's motion for a stay on the implementation of this plan again depends on the "balance of equities" evidenced by the other three factors.
 
 
 30
 2. Irreparable Injury to the Government.
 
 
 31
 The actual implementation of the required plan--that is, the holding of hearings for these respondents--does create a likelihood of injury to the government. As we noted above, its interest in supervising the immigration process is "weighty" and that interest is largely entrusted to the sovereign prerogative of the political branches. Landon, 459 U.S. at 34, 103 S.Ct. at 330. We have found for purposes of this motion that there is a substantial likelihood that these respondents have no constitutional entitlement to the relief that the trial court has mandated. If that indeed proves to be the case, then these hearings will have been unnecessarily conducted. The actual process of according hearings for these people will result in costs irrevocable, both of time and of money.[3] We are chary of imposing on the government the not inconsiderable burden of actually conducting these hearings until such time as this Court has passed on the merits. Accordingly, we find that the balance of equities here tips toward the government.
 
 
 32
 3. Substantial Injury to the Adverse Party.
 
 
 33
 We need not repeat that the respondents have made a strong showing of substantial injury should it be determined that their liberty interests have been improperly denied.
 
 
 34
 4. The Public Interest.
 
 
 35
 As we noted in the discussion of factor 2, supra, there are considerable difficulties attendant in actually conducting the hearings that appear necessary to effectuate the trial court's mandate, not the least of which is the government's suggestion that making a proper determination of who will be detained and who will be released is an inexact, vexing task. To the extent that the hearings result in the erroneous release of refugees who pose actual (as opposed to putative) risk to the general public due to mental or criminal defect, there is a strong danger of injury to American citizens and hence the public interest.[4] This is a danger that is manifest only at the stage of implementation of the plan, not at the point of crafting it. The equities here lean toward the government, and against the respondents.
 
 
 36
 The respondents have again demonstrated a significant likelihood of irreparable injury. But that injury will only arise if the constitutional right the trial court recognized actually obtains for these respondents. Their right to actually have the hearings at issue is contingent upon further review by this Court. On the other hand, the injuries that the government has suggested both to it and to the public are substantially more weighty than was the case with the question of submitting a plan. We find that, viewing the totality of the circumstances, the balance of equities on this question lies with the government. That being the case, the showing of a substantial probability of success on appeal justifies the issuance of a stay of that portion of the district court's order directing implementation of a hearing plan until such time as a panel of this Court passes on the existence of a nonconstitutionally-based liberty interest. Ruiz v. Estelle, 650 F.2d at 565.
 
 C. The Merits:
 
 37
 The issues here presented are complex and of great import; the trial court devoted time and care in attempting to unravel this controversy. The government moves that this Court summarily reverse the trial court on the merits of the case. It offers no precedent, statute, or logical basis for taking such an extraordinary step. We decline to do so.
 
 
 38
 Our rules provide for summary affirmance of a trial court holding upon consideration of briefs with or without oral argument, 11th Cir.R. 25, and for disposition of cases upon briefs but without oral argument, 11th Cir.R. 23(b). But we find no substantive or procedural justification for reaching and deciding the merits of a controversy decided below without at the very least according the adverse party the constitutional imperative of due process--a hearing before this Court at which that party may present argument in written or oral form.[5]
 
 
 39
 On the other hand, we recognize that this matter has important ramifications for all parties involved and has been moving through this Circuit's courts for five years. We believe that the interests of justice may be served best by ordering this case docketed for oral argument before a panel of this Court at the earliest practical time. We leave for them the merits of the trial court's rulings on the existence of liberty interests, on the appropriateness of treating respondents as a class, and on the dictates of public international law.
 
 III.
 
 40
 For the reasons foregoing, we hold that the government's motion to stay that portion of the trial court's order directing the preparation of a plan for determining the appropriateness of detention should be DENIED. We hold that the government's motion as to the implementation of that plan has merit and is GRANTED. The district court is STAYED from acting to effectuate any plan pending further consideration of this case by a panel of this Court. The government's motion to summarily reverse the trial court's determination of the merits is DENIED. The parties are granted a total of fifty days for the preparation and filing of briefs, that time to be apportioned equitably by the Clerk of this Court. Upon completion of the briefing schedule, the Clerk of this Court is directed to place this case on the first available calendar for oral argument. See, 11th Cir.R. 24(e).
 
 
 41
 IT IS SO ORDERED.
 
 CLARK, Circuit Judge, concurring specially:
 
 42
 While I agree with the result reached by the majority, I do not concur with the majority's unnecessary conclusion that the government will probably succeed on the merits. That is an open question. While I think the district court was justified in relying on United States ex rel. Paktorovics v. Murff, 260 F.2d 610 (2d Cir.1958), I agree that the interests of the government and the public are sufficiently strong to delay implementation of the plan pending appeal.
 
 
 43
 I conclude that the majority incorrectly applies Ruiz v. Estelle, 650 F.2d 555 (5th Cir. Unit A 1981). Our binding precedent specifically adopted the view of the District of Columbia Circuit in Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841 (D.C.Cir.1977), which stated in part:
 
 
 44
 "The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors."
 
 
 45
 650 F.2d at 565.
 
 
 46
 Since I find the contentions of the parties in equipoise, I reject the dictum of the majority as set out in Parts II. A. 1. and II. B. 1.
 
 
 
 [1]
 In Fernandez-Roque v. Smith, 671 F.2d 426 (11th Cir.1982) ["Fernandez I "], we considered the jurisdictional issues raised by the issuance of a temporary restraining order preventing the government from deporting the respondents. In Garcia-Mir v. Smith, 766 F.2d 1478 (11th Cir.1985) ["Garcia-Mir I "], we considered the scope and effect of a Status Review Plan promulgated by the Attorney General and its effect on the parole of some class members
 
 
 [2]
 We have recognized that the immigration of the Mariel Cubans to this country was effected in an extraordinary fashion contrary to the usual strictures of the immigration laws. United States v. Frade, 709 F.2d 1387, 1395-97 (11th Cir.1983)
 
 
 [3]
 As the government notes in its memorandum in support of its motion, because these refugees arrived in this country without documentation of their medical and criminal pasts, the government faces a difficult task in proving by clear and convincing evidence that certain of these respondents ought to be detained without parole due to mental illness or criminal convictions in Cuba
 
 
 [4]
 Of course, in reaching this result, we in no way should be taken to derogate the strong public interest in ensuring that all those under the mantle of our Constitution's protection are accorded the fundamental right to due process of law. To the extent that such rights are implicated, they countervail the risk of injury to the general public attendant upon an erroneous determination that some should be released. It is a cornerstone of our system of government that we "prefer twenty guilty men to escape" than for "one innocent to be condemned unjustly." J. Fortescue, De Laudibus Legum Angliae 65 (Chrimes ed. 1949)
 
 
 [5]
 The respondents have also filed a cross-appeal in this case. Because we do not reach the merits, we decline to pass on the respondents' cross-appeal and order that it be heard together with the government's appeal on the expedited schedule we provide in Section III