Ricky WYATT, by and through His Aunt and Legal Guardian Mrs. W.C. RAWLINS, Jr., et al., Plaintiffs,

v.

Kathy E. SAWYER, as Commissioner of Mental Health and Mental Retardation, and the State of Alabama Mental Health, Officer, et al., Defendants.

United States of America, Amicus Curiae.

No. Civ.A. 70–T–3195–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 21, 1999.

---

Ira A. Burnim, Leonard S. Rubenstein, Linda V. Priebe, Washington, DC, James M. Lichtman, Ropes & Gray, Washington, DC, Fern Singer, Sirote & Permutt, Birmingham, AL, James A. Tucker, Alabama Disabilities Advocacy Program, Tuscaloosa, AL, Kathryn H. Sumrall, Jackson, Garrison & Sumrall, Birmingham, AL, Allen Smith, Jr., Warm Springs, MT, Iris Eytan, San Francisco, CA, for plaintiffs.

Algert S. Agricola, Jr., Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery, AL, Ricky J. McKinney, Burr & Forman, Birmingham, AL, Mary Elizabeth Culberson, Courtney Wayne Tarver, Office of the Attorney General, Montgomery, AL, Edward A. Hosp, Governor's Office, Montgomery, AL, Charles B. Campbell, Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL, James Darrington Hamlett, Devereaux & Associates, Montgomery, AL, June E. Lynn, G.R. (Rick) Trawick, Department of Mental Health & Mental Retardation, Bureau of Legal Services, Montgomery, AL, Gregory D. Crosslin, Clifton E. Slaten, Mindi C. Robinson, Crosslin, Slaten & O'Connor, P.C., Montgomery, AL, for defendants.

Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, Bill Lann Lee, Robinsue Frohboese, Judith C. Preston, Tawana E. Davis, Robert C. Bowman, United States Department of Justice, Civil Rights Division, Special Litigation Section, Washington, DC, for United States of America, amicus.

## ORDER

MYRON H. THOMPSON, District Judge.

This litigation is before the court again, this time on the defendants' renewed motion, filed August 30, 1999,[1] to stay all litigation pending their appeal of this court's opinion and judgment of December 15, 1997. *See Wyatt v. Rogers*, 985 F.Supp. 1356 (M.D.Ala. 1997) (Thompson, J.).[2] As will be explained below, the motion should be denied.

## I. *BACKGROUND*

Due to the very lengthy history of this case, which involves the conditions in the Alabama Mental Health and Mental Retardation System, the court will describe only

---

1. Doc. no. 1915.

2. Doc. nos. 1568 & 1569.

those facts directly bearing on the issue now before it. This court's December 1997 decision describes the case's history in much greater detail, and therefore should be considered as a supplement to this order.

In the court's December 1997 decision, the court ruled on the defendants' motion for a finding that they had met their obligations under the 1986 consent decree, and to terminate the litigation. The defendants maintained that they had met their obligations under the *"Wyatt* standards" set forth in two 1972 opinions, *see Wyatt v. Stickney,* 344 F.Supp. 373 (M.D.Ala.1972) (standards for mentally ill) (Johnson, J.), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974); *Wyatt v. Stickney,* 344 F.Supp. 387 (M.D.Ala.1972) (standards for mentally retarded) (Johnson, J.), *aff'd in relevant part,* 503 F.2d 1305 (5th Cir.1974), and elsewhere, *see, e.g., Wyatt v. Poundstone,* 1995 WL 430939 (M.D.Ala. July 11, 1995) (Thomson, J.); *Wyatt v. King,* 793 F.Supp. 1058 (M.D.Ala.1992) (Thompson, J.); *Wyatt v. Ireland,* No. 70–3195, 1979 WL 48253 (M.D.Ala. October 25, 1979) (Johnson, J.); *Wyatt v. Hardin,* No. 70–3195 (M.D.Ala. June 29, 1976) (Johnson, J.), and under the 1986 consent decree, *see Wyatt v. Wallis,* 1986 WL 69194 (M.D.Ala. Sept. 22, 1986). After detailed consideration of the evidence, the court refused to terminate this litigation but did release the defendants from a significant number of the court-ordered requirements. *See Wyatt,* 985 F.Supp. at 1435–36.

The defendants' stay motion comes almost two years after entry of the December 1997 decision. In that time, the parties have made substantial progress toward final resolution of this litigation, as manifested through a number of significant events, including but not limited to the following:

● With the direct involvement and express approval of the defendants, the court has set up an aggressive schedule leading to trials next spring when the court will address whether the defendants should be released from all remaining court-ordered requirements and whether this litigation should be terminated in whole. A pretrial and a trial on the mental illness side of the litigation are set for April 19 and May 22, 2000, respectively, and a pretrial and a trial on the mental retardation side of the litigation are set for May 1 and June 12, 2000, respectively.[3]

● Monthly progress status conferences, aimed at narrowing and prodding settlement of issues and "toward full and speedy compliance with the 1986 consent decree and the dismissal of this lawsuit,"[4] were held on January 22, February 5, March 4 and 31, April 22, May 26 and 28, August 19, October 15, and December 18, 1998, and January 15, March 8 and 18, April 7, May 14, July 12, August 3 and 20, September 1 and 21, and October 21, 1999; future status conferences are set for November 23 and December 16, 1999; and, in line with this approach, additional monthly status conferences will be set for the year 2000.[5] In order to assist the court, the parties, and amicus curiae United States in keeping track of the pending issues, the defendants, at the direction of the court, have submitted, one week prior to each conference, an agenda and joint report.[6] The joint reports have contained a chart with the following items: a listing of each mental-illness and mental-retardation standard (including its number and a description of the subject-matter), each paragraph of the 1986 consent decree (including its number and a description of the subject-matter), and all other applicable court orders, for which compliance is or has been an issue; a statement of whether the defendants have been released from the standard or paragraph; if the defendants have been released, the date and docket number of the court's order; a statement regarding the status of each unreleased standard and paragraph, including, but not limited to, whether a motion to release is pending, whether a motion to release is imminent, or whether the item is in negotiation; and a similar set of information for each indi-

---

3. *See* Doc. nos. 1861, 1890, 1895, 1908.

4. *See* Doc. no. 1621.

5. *See* Doc. nos. 1789, 1826, 1859, 1863, 1866, 1873.

6. *See* Doc. nos. 1701, 1807, and 1808.

vidual institution. Each agenda has contained a list of all matters to be discussed at the status conference and a list of all matters pending before the court (including motions, appeals from the Magistrate Judge, and other submissions), and a statement on the status of each matter (including whether it is in briefing, needs a hearing, or is under submission with the court).

● The parties have actively engaged in extensive discovery to narrow and clarify the issues and to prepare for upcoming trial dates. The parties have engaged in a formal mechanism, as ordered by the court, through which the defendants have submitted requests for admission to the plaintiffs, and the plaintiffs have responded.[7] This process is unusual because typically such initial discovery would be flowing in the direction of the defendants rather than from them.

● So as to narrow the issues for the upcoming trials, the plaintiffs' attorneys and experts have conducted, and are continuing to conduct, extensive tours of the defendants' facilities.[8]

● The parties are now in the process of preparing statements of the issues about which they agree and disagree, and the statements are due on November 18, 1999.[9]

● By November 18, 1999, the parties are to file the appropriate dispositive motions which will bring all outstanding issues to a head and which will be heard at the upcoming trials.[10]

● The court has sought to reduce the costs of the discovery process by appointing, with the approval of the defendants, a mediator and special master (one person) who will assist the court in selecting a court expert.[11] The special master has begun the process of selecting this expert, who will help the parties identify and resolve disputes as they prepare for trial.[12]

● This special master has also worked intimately and diligently with the parties to resolve outstanding issues.[13] For example, when, on March 1, 1999, the plaintiffs filed an emergency civil contempt motion alleging that plaintiff class members at the Lurleen B. Wallace Center have been "killed, raped, and maimed by defendants' staff," [14] this matter was referred to the special master for possible out-of-court resolution.[15]

● Finally, as part of the court's aggressive attempt to move this case toward some type of final resolution of all issues, the parties have participated in lengthy negotiations that have resulted in the filing and granting of four joint motions to release the defendants from particular *Wyatt* standards and to release certain facilities from the 1986 consent decree. In the December 1997 decision, the court indicated that the defendants were close to compliance with a number of standards and other requirements, and the court set up a procedure of monthly status conferences to prod the parties into resolving their differences over these standards. Pursuant to this procedure and at the request of the parties, the court has now released the defendants from the following additional requirements by agreement of the parties: mental-illness standards 4, 14, 15, 16, 23, 31, and 35, and mental-retardation standards 27, 38, and 42. And subject to certain conditions, the court also released the following state facilities: Mary Starke Harper Geriatric Psychiatry Center in full; S.D. Allen Intermediate Care Facility in full; Alice M. Kidd Intermediate Care Facility in full; Claudette Box Nursing Facility in full; North Alabama Regional Hospital in full; Greil Memorial Psychiatric Hospital in full; and Thomasville Mental Health Rehabilitation Center except as to mental-illness

7. *See* Doc. nos. 1798, 1804, 1805, 1815, 1816, 1855, 1857, 1868, 1895, 1908.

8. *See* Doc. nos. 1855, 1861, 1868, 1908.

9. *See* Doc. nos. 1855, 1861, 1868, 1895, 1908.

10. *See* Doc. nos. 1861, 1895, 1908.

11. *See* Doc. nos. 1872, 1879, 1889.

12. *See* Doc. nos.1914, 1956.

13. *See* Doc. nos. 1851, 1856.

14. *See* Doc. no. 1827.

15. *See* Doc. no. 1865.

standards 1, 2, and 34; ¶¶ 5 and 9 of the 1986 consent decree. *See Wyatt v. Sawyer*, 1999 WL 805285 (M.D.Ala. October 4, 1999) (Thompson, J.)[16]; *Wyatt v. Rogers*, 1998 WL 862920 (M.D.Ala. December 9, 1998) (Thompson, J.)[17]; *Wyatt v. Rogers*, 1998 WL 264783 (M.D.Ala. May 14, 1998) (Thompson, J.)[18]; *Wyatt v. Rogers*, 1998 WL 213779 (M.D.Ala. April 21, 1998) (Thompson, J.).[19] Because the last joint motion was filed almost simultaneously with the defendants' stay motion, the court assumes that this micro-mediation process is still ongoing.

From this activity, it is apparent that this litigation is steadily progressing toward its final resolution. Contributing to these efforts, newly appointed Commissioner of Mental Health and Mental Retardation Kathy E. Sawyer has, as this court recently observed, directly addressed one of the primary concerns of the court: the past unwillingness of the Mental Health and Mental Retardation Department to address rather than hide serious problems. As this court stated in its order of October 7, 1999: "Commissioner Sawyer has made clear that all problems will be 'aired' and that all will be directly and forcefully addressed. Therefore, it appears now within sight that, under the leadership of Commissioner Sawyer, this litigation will come to an end in the near future, and certainly within her stint as Commissioner." *Wyatt v. Sawyer*, 67 F.Supp.2d 1331, 1358–59 (M.D.Ala.1999) (Thompson, J.).[20]

Midst all of this, the defendants now suddenly seek to bring this litigation to a screeching halt. They have twice before filed motions to stay the litigation pending their appeal: the first, on January 13, 1998, was in tandem with an appeal notice filed the same day and was in the wake of the December 1997 decision;[21] and the second was a year later, on February 24, 1999.[22] Each time, they withdrew their motions due to the resumption of good-faith negotiations be-

tween the parties. On August 30, 1999, the defendants once again filed a motion to stay litigation pending appeal, and it is this motion that is now before the court.

## II. *DISCUSSION*

■ Because a stay pending appeal would interrupt the ordinary process of judicial review and postpone even further the final resolution of this litigation, it is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Winston–Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231, 92 S.Ct. 1236, 1241, 31 L.Ed.2d 441 (1971) (Burger, C.J., in chambers). The United States Supreme Court has held that, in determining whether to grant a stay pending resolution of an appeal, courts must examine the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986.) Each of these factors points toward denying the motion for a stay.

### A.

■ The first factor, the defendants' likelihood of success on appeal, is the most important. *Garcia–Mir*, 781 F.2d at 1453. Ordinarily, this element requires that the moving party demonstrate that the order from which it appeals was clearly erroneous. *See id.* The defendants may also meet their burden by showing only that their appeal presents a "substantial case on the merits," but only if the balance of the remaining three factors weighs heavily in favor of granting the stay. *See id.; Ruiz v. Estelle*, 650 F.2d 555, 565

---

**16.** *See* Doc. no.1951.

**17.** *See* Doc. no. 1790.

**18.** *See* Doc. no. 1717.

**19.** *See* Doc. no. 1695.

**20.** *See* Doc. no.1955.

**21.** *See* Doc. no. 1611.

**22.** *See* Doc. no. 1820.

**690**

(5th Cir.1981), *cert. denied* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).[23]

In this case, even if the court were to find that the defendants' appeal presented a "substantial case on the merits," their motion would nonetheless fail, because, for reasons articulated below, the balance of the equities based on factors two through four do not weigh heavily in favor of granting the stay. Therefore, the court need only consider whether the defendants have demonstrated that the December 15, 1997 order was clearly erroneous. The court concludes that they have not.

 Based on the arguments presented by the parties to this court, it appears that the defendants have raised three issues on appeal. First, they contend that the court exceeded its authority by setting the bar for releasing defendants from the mental-retardation and mental-illness standards higher than the constitutional minimum. Though their argument might have had some validity in the context of an adjudicated case in which remedies for proven constitutional violations had been ordered, it is wholly meritless in a case such as this one in which the parties have voluntarily entered into a consent decree. Whether or not the standards to which the defendants voluntarily bound themselves, and which the court now enforces, exceed the constitutional minimum is irrelevant. A consent decree may remain valid and enforceable throughout its agreed-upon duration, regardless of whether it is more or less burdensome than federal law requires, either at the time it is entered or at any time thereafter. *See Suter v. Artist M.,* 503 U.S. 347, 354 n. 6, 112 S.Ct. 1360, 1365 n. 6, 118 L.Ed.2d 1 (1992); *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 389–90, 112 S.Ct. 748, 762, 116 L.Ed.2d 867 (1992). The defendants have not provided, nor is the court aware of, any evidence to suggest otherwise.

Second, the defendants claim on appeal that the court's December 1997 opinion relies on insufficient evidence to support its conclusions about compliance, and fails to explain precisely enough what indicators or standards were used in reaching such conclusions. To the contrary, the court received and considered copious evidence on these matters over the course of a 35–day trial in the spring of 1995, as well as through the parties' extensive briefing of the issues. In its order, the court provides lengthy and detailed explanations of the factual bases for each finding of noncompliance, as well as specific examples of the kinds of measures necessary to achieve compliance in most instances. The defendants' claim of insufficient evidentiary or legal bases for the court's findings of noncompliance is thus not likely to succeed on appeal, and certainly does not rise to the level of demonstrating clear error in this court's rulings.

Third, the defendants contend on appeal that the court's December 1997 decision was based on unreliable expert testimony erroneously admitted by the court. Beyond certain sweeping statements about the "innumerable deficiencies" and "scientific unreliability" of the plaintiffs' expert evidence, however, the defendants point to no specific evidence that suggests that the court clearly erred in admitting such expert testimony. This claim, like the others, therefore does not appear so likely to succeed on appeal as to merit a stay of litigation.

Finally, the fact that the stay motion comes almost two years after the 1997 decision, and after aggressive and extended preparation for further litigation, dramatically reflects that the defendants do not themselves believe that, in its December 1997 decision, the court committed clear error (for if they had they would have pursued to the end the stay motion they filed back in January 1998) and strongly, if not decisively, reinforces the court's conclusion that they cannot satisfy the first *Hilton* factor.

**B.**

 In addition to their failure to demonstrate clear error in the court's December 1997 order, the defendants' motion should be

---

**23.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

denied because a balancing of the second, third, and fourth *Hilton* factors weighs against granting a stay. Even if their arguments on appeal were sufficiently strong to make out a substantial case on the merits, a stay would therefore not be warranted.

The second factor delineated in *Hilton* requires the court to consider whether the defendants will suffer irreparable harm absent a stay of litigation. The court's simple response to this factor is more rhetorical than anything else: Why now? Twice the defendants have filed stay motions (with the first being filed in tandem with their appeal notice and in the wake of the December 1997 decision) and both times they withdrew the motions. The obvious question is, Why are the defendants now facing irreparable harm when, in the midst of the all the litigation over the last two years, they were not?

At times, it appears from the defendants' filings that the reasons behind their stay request are that they believe that the plaintiffs are not being reasonable and fair in the discovery process and that the plaintiffs are not engaging in good-faith settlement negotiations. Neither together nor separately do these reasons support a stay. First and most obviously, these two reasons simply do not meet the *Hilton* factors. Second, if the defendants have a beef with the plaintiffs over discovery then the dispute should be resolved in accordance with the Federal Rules of Civil Procedure, that is, the dispute should be brought to attention of this court for resolution. Third, there is nothing in the record that even suggests that the litigation activity over the last two years was conditioned on the defendants' unilateral approval of the resolution of all discovery disputes or the defendants' unilateral determination of whether the plaintiffs' effort at settlement have been in good faith. In addition, while the court admittedly has only limited knowledge of the parties' efforts at settlement (with that knowledge being mainly that settlement discussions have gone on and that the parties have resolved a number of important issues, as reflected in the background discussion above), that knowledge reflects that the plaintiffs have been very open, reasonable, and cooperative. And, with regard to discovery, the court is totally unaware of any actions on the plaintiffs' part that could be characterized as having been unreasonable or in bad faith and that would even begin to support a stay of the litigation.

Nevertheless, the court can certainly appreciate that this litigation is costly for all the parties involved. While the parties have already expended substantial time and money, they will have to expend substantial additional time and expense. This factor does not warrant the conclusion, however, that they will suffer irreparable harm. The financial burdens of litigation on their own do not necessarily amount to "irreparable harm" favoring a stay. And, as stated, the claim of irreparable harm seems particularly disingenuous in light of the fact that, during the nearly two years since the court's December 1997 order, litigation has continued to progress, and defendants have remained active and willing participants. Scheduling orders have been entered, trial dates have been set, discovery is ongoing and brisk, and a special master has been appointed, all with the approval of defendants and without any sign of irreparable harm. The defendants have participated in negotiations to narrow the issues, they have submitted requests for admission to the plaintiffs, and they have attended monthly status conferences, also without evidence of irreparable harm. The court is confident that, after so much activity and so much progress, there is no basis to conclude that irreparable harm has suddenly developed.

The plaintiffs, on the other hand, will suffer substantial harm. First, they will suffer such in the form of inadequate treatment and conditions with every passing day of noncompliance with the 1986 consent decree, and the court refuses to prolong this harm any longer than necessary. Now, when so much progress has been made and so much is just on the horizon, is a particularly inopportune moment to halt this case in its tracks. Granting a stay would terminate the parties' negotiations, which have been so effective in resolving issues and whittling down the areas of dispute. A stay would render the substantial discovery activities, including the plaintiffs' tours and their responses to the defendants'

requests for admission—which have consumed considerable time and expense for both parties—essentially meaningless. And it would also negate the special master's work thus far on the selection of a court expert.

A stay would disempower the court to address emergency matters that have and might arise. The plaintiffs' inability to obtain judicial relief in such matters would result in substantial harm. The likelihood that such emergency matters would arise before the Eleventh Circuit rules on defendants' appeal is by no means slight. On March 1, 1999, for example, the plaintiffs filed an emergency motion concerning the Lurleen B. Wallace Center,[24] which they subsequently withdrew pursuant to an agreement with defendants to negotiate in good faith on the matter. This matter is still in dispute. If the court were now to stay this litigation, it would prevent the plaintiffs from renewing their motion, and would thereby relieve the defendants of any incentive to continue negotiations on the matter. Indeed, a stay would be tantamount to a denial of the plaintiffs' emergency motion without a hearing and consideration of the issues.

A stay at the present moment would also be particularly destructive given Commissioner Sawyer's commitment to achieving final resolution of this litigation. With her support of the recent efforts to resolve issues and eliminate disputes, it is essential that the court allow the parties to press forward and continue to make progress.

The final factor that the court must consider, and which also weighs against granting the stay, is the public interest. The public's primary interests in this matter are in ensuring that the parties continue to make progress toward resolution of this case, and in providing adequate services to persons with mental illness and mental retardation. Neither of these interests would be served by granting a stay at a moment so untimely as the present. With the pretrial conference only seven months away, and trial only eight months away, resolution of the case depends upon the court's ability to continue to address the remaining issues.

24. *See* Doc. no. 1827.

Taken as a whole, factors two through four—irreparable harm to defendants from continued litigation, harm to the plaintiffs caused by a stay, and the public interest—clearly stack up against granting the defendants' motion for a stay. Even had the defendants demonstrated a substantial case on appeal, therefore, their motion would not succeed.

## III. *CONCLUSION*

While, as the court has attempted to demonstrate above, application of the *Hilton* factors points decidedly toward denial of the defendants' stay motion, the court adds these comments. While admittedly the defendants are not estopped as a matter of law from pursuing their stay motion, they should be estopped out of an every day sense of fair play. Over the last two years and with the willing cooperation of the defendants, all other parties to this litigation have themselves expended much time, energy, and money under the assumption that the case would proceed. To allow the defendants to bring this litigation to a halt now would simply be unfair to everyone else connected with the litigation.

For the foregoing reasons, it is ORDERED that the defendants' renewed motion for stay of all litigation pending appeal, filed August 30, 1999 (Doc. no.1915), is denied.

The clerk of the court is DIRECTED to provide a copy of this order to counsel for all parties by facsimile transmittal.