UNITED STATES of America,
Plaintiff,

Timothy D. Pope, Plaintiff–Intervenor,

Johnny Reynolds, et al., Plaintiff–Intervenors,

Eugene Crum, Jr., et al., Plaintiff–Intervenors,

v.

Tommy G. FLOWERS,
et al., Defendants.

Alabama State Conference of NAACP Branches, Amicus Curiae.

Civil Action No. 2:68cv2709–T.

United States District Court,
M.D. Alabama,
Northern Division.

May 20, 2005.

Jay D. Adelstein, Washington, DC, Marybeth Martin, Washington, DC, Patricia A. Snyder, Montgomery, AL, Sharon A. Seeley, Stephen J. Curran, Washington, DC, for United States of America.

Gary Lamar Brown, Jimmy Michael Cooper, Raymond P. Fitzpatrick, Jr., Richard Scott Clark, Fitzpatrick, Cooper & Clark, LLP, Birmingham, AL, for Timothy D. Pope.

Ann K. Wiggins, Deborah Ann Mattison, Henry Wallace Blizzard, III, Kell Ascher Simon, Robert L. Wiggins, Jr., Rocco Calamusa, Jr., Russell Wayne Adams, Robert F. Childs, Jr., Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Johnny Reynolds.

Kell Ascher Simon, Wiggins Childs Quinn & Pantanzis, PC, Robert L. Wiggins, Jr., Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Peggy Allen, Martha Ann Boleware, Jeffrey Brown, Ouida Maxwell, Cecil Parker, Robert Johnson.

Christopher W. Weller, Henry Clay Barnett, Jr., Capell Howard PC, Montgomery, AL, John J. Park, Jr., Montgomery, AL, Lisa Wright Borden, Baker Donelson Bearman Caldwell & Berkowitz PC, Birmingham, AL, Mai Lan Fogal Isler, Capell Howard PC, Margaret L. Fleming, Montgomery, AL, Patrick Hanlon Sims, Cabaniss Johnston Gardner Dumas & O'Neal, Mobile, AL, R. Frank Ussery, Richard N. Meadows, Montgomery, AL, for Thomas G. Flowers.

Mark Jefferson Williams, Montgomery, AL, for Ala State Employees, Bob Cook, Al Sessions, Ann Geisenheimer.

Alice Ann Byrne, Christopher W. Weller, Capell Howard PC, Henry Clay Barnett, Jr., Capell Howard PC, John J. Park, Jr., Montgomery, AL, Lisa Wright Borden, Baker Donelson Bearman Caldwell & Berkowitz PC, Birmingham, AL, Mai Lan Fogal Isler, Capell Howard PC, Margaret L. Fleming, R. Frank Ussery, Richard N.

Meadows, Montgomery, AL, for State of Alabama Personnel Department.

Alabama Department of Corrections, Legal Division, Montgomery, AL, pro se.

J. Richard Cohen, Montgomery, AL, for Alabama State Conference of NAACP Branches.

Gary Lamar Brown, Fitzpatrick, Cooper & Clark, Birmingham, AL, for Billy R. Stephens, Janet E. Justice, John D'Arville, Quinton W. Beard, Loyd Arrington.

Edward Andrew Hosp, Maynard Cooper & Gale, PC, Birmingham, AL, for Don Siegelman.

Robert F. Childs, Jr., Wiggins Childs Quinn & Pantanzis, PC, Rocco Calamusa, Jr., Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Private Plaintiffs.

Deborah Ann Mattison, Wiggins Childs Quinn & Pantanzis, PC, Henry Wallace Blizzard, III, Wiggins Childs Quinn & Pantanzis, P.C., Kell Ascher Simon, Wiggins Childs Quinn & Pantanzis, PC, Robert L. Wiggins, Jr., Wiggins Childs Quinn & Pantanzis, PC, Russell Wayne Adams, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Ouida Maxwell, Peggy Vonsherie Allen.

Ann K. Wiggins, Wiggins Childs Quinn & Pantanzis, PC, Byron Reynard Perkins, Perkins & Associates, Henry Wallace Blizzard, III, Wiggins Childs Quinn & Pantanzis, P.C., Robert F. Childs, Jr., Wiggins Childs Quinn & Pantanzis, PC, Robert L. Wiggins, Jr., Wiggins Childs Quinn & Pantanzis, PC, Rocco Calamusa, Jr., Wiggins Childs Quinn & Pantanzis, PC, Russell Wayne Adams, Wiggins Childs Quinn & Pantanzis, PC, Kell Ascher Simon, Wiggins Childs Quinn & Pantanzis, PC, Bir-

mingham, AL, for Eugene Crum, Jr. and other plaintiffs and plaintiff-intervenors in In Re Employment Discrimination Litigation Against The State of Alabama Civil Action No. 94–T–356–N.

## ORDER

MYRON H. THOMPSON, District Judge.

This litigation, *United States v. Flowers*, civil action no. 2:68cv2709–T (previously styled *United States v. Frazer*, and still frequently known today as *"Frazer"* or the *"Frazer* litigation"), is before the court on the difficult issue of what discovery, if any, the court should allow before it decides whether *Frazer's* 35–year–old "no-bypass rule" should be terminated.

### I.

Paragraph 3 of § II of the 1970 injunction in *Frazer* provides as follows:

"Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain that finding."

*United States v. Frazer*, 317 F.Supp. 1079, 1091 (M.D.Ala.1970). This provision, which embodies what is now called the no-bypass rule, prohibits Alabama state officials from bypassing a higher-ranked African–Ameri-

can applicant in favor of a lower-ranked white applicant on a certificate of eligibles. The rule was imposed in response to evidence that, up until 1970, the State of Alabama was unabashedly refusing to hire and promote African–Americans to almost any and all non-menial positions in state government because of their race.

On May 20, 2003, plaintiff United States of America was joined by the defendants, who are officials of the State of Alabama, in filing a motion to terminate the no-bypass rule. This court granted permissive intervention to representatives of African–American employees of the State of the State of Alabama, and to Timothy Pope, a white employee of the Alabama Department of Corrections who says he was denied a promotion because of the no-bypass rule. On January 28, 2004, Pope joined the United States and the state defendants in their termination motion.

This court instructed the parties to agree on a discovery plan, but they could not do so. The United States, the state defendants, and Pope argued that discovery should be limited to an analysis of the data underlying the statistical report that the original parties had submitted, which purports to show that the no-bypass rule is no longer necessary. The African–American intervenors wanted discovery to be much broader, encompassing information about specific instances of alleged discrimination across the State government; they argued that the question of whether the no-bypass rule was still necessary could require an agency-by-agency or classification-by-classification analysis.

This court initially approved the more limited proposed discovery plan of the United States, the defendants, and Pope. However, the court left open the possibility that it would allow more discovery after reviewing the African–American intervenors' rebuttal report.

## II.

The discovery dispute presented to the court is difficult because the court is confronted with two serious and competing concerns. On the one hand, the court is very reluctant to foreclose further discovery by the African–American intervenors, for the court would be essentially ruling on the merits of the issue presented without having given all interested parties an opportunity to develop their case. Further discovery and court action is warranted on, at least, the important issues presented pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ On the other hand, the court is confronted with the following reality: First, the no-bypass rule is a race-conscious provision and, as such, must meet "strict scrutiny" standards and must be "narrowly tailored," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995); if logic and common sense are to apply, the no-bypass rule cannot be both narrowly tailored and everlasting. Second, the rule has been in effect for approximately 35 years without an independent court review to determine if it continues to meet legal requirements. Because the rule cannot be everlasting, this circumstance is impermissible; in other words, the rule simply cannot continue without a court finding that it continues to meet the demanding requirements for race-conscious relief. Third and finally, the evidentiary record submitted by United States and state defendants shows a strong likelihood that, when all is said and done, the rule cannot continue. Although the court recognizes that the African–

American intervenors maintain that Alabama has not progressed enough to warrant the rule's termination, it cannot be discounted that the racial make-up of Alabama's government is dramatically different from what it was in 1970, when the no-bypass rule was imposed.

■ In resolving these competing concerns, the court concludes that it should be guided by the standards developed for issuing a preliminary injunction. Generally, a preliminary injunction should be entered if the movant clearly establishes that (1) there is a substantial likelihood of success on the merits, (2) irreparable injury will be suffered unless the injunction issues, (3) threatened injury to the movant outweighs whatever damage proposed injunction may cause the opposing party, and (4) the injunction, if issued, would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998). "Ordinarily the first factor is most important." *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986). This court believes that, with these standards tailored to the circumstances of this case, the United States, the state defendants, and Pope have met them.

■ As indicated above, there is not only a likelihood, but a strong likelihood, that the United States, the state defendants, and Pope will prevail on the merits of their motions. In light of the substantial positive change in the racial makeup of the government of the State of Alabama after the uninterrupted implementation of the no-bypass rule for 35 years, the court believes that the record strongly suggests that, on balance, the African–American intervenors will not suffer substantial harm from the mere temporary cessation of the no-bypass rule pending the resolution of the pending substantive motions. And in light of the Supreme Court's strong mandate that all race-conscious relief must be narrowly tailored, the court further believes that the record strongly suggests that the continued implementation of the no-bypass rule would cause irreparable injury to all state employees and applicants for state jobs, and thus would be against the public interest, in the absence of an independent and compelling finding by the court that such race-conscious relief is still warranted after having been implemented for over a third of a century.

The court, however, recognizes that the African–American intervenors believe that the State has not progressed enough and, in fact, there may be evidence that some state officials have intentionally used devices (such a manipulation of registers and giving everyone the same score) so as to circumvent the no-bypass rule. But the important question is whether the picture of race-relations in the government of the State of Alabama has reached the critical point where claims of race discrimination can be adequately addressed through traditional federal remedies, such as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981; the current record strongly suggests that that picture, albeit perhaps a very imperfect one, has reached that point.

This court therefore tentatively concludes that it should *preliminarily* and *immediately* discontinue the no-bypass rule. However, because the court's approach in this case has not been informed by the parties (in particular, the African–American intervenors), the court will not make a final decision on whether the no-bypass rule should be suspended without hearing first from all concerned.

Accordingly, it is ORDERED that all parties show cause, if any there be, in writing by no later than May 9, 2005, as to the following:

(1) Why plaintiff United States of America and the state defendants' joint motion to terminate the no-bypass rule (Doc. No. 634) and plaintiff-intervenor Timothy Pope's motion to modify injunction as to the no-bypass rule (Doc. No. 659) should not be treated as also requests for preliminary relief; and

(2) Why said requests for preliminary relief should not be granted as outlined in this order.

It is further ORDERED that, by no later than May 20, 2005, the court will resolve whether preliminary relief should be granted.

In a companion order entered today the court addresses what discovery is allowed on plaintiff United States of America and the state defendants' joint motion to terminate the no-bypass rule (Doc. No. 634) and on plaintiff-intervenor Pope's motion to modify injunction as to the no-bypass rule (Doc. No. 659).

DONE, this the 29th day of April, 2005.

### ORDER

This litigation is again before the court, this time on whether the court should implement the preliminary relief suggested in its show-cause order of April 29, 2005.[1] The defendants agree to the relief; intervenor Timothy Pope not only agrees to the relief, he has also filed a motion expressly asking for such relief; plaintiff United States of America opposes the interim relief and instead requests that the no-bypass rule be terminated immediately and permanently without allowing for any additional discovery and without resolving any of the currently pending discovery disputes; and the African–American intervenors oppose any relief, preliminary or permanent.

■ For the reasons stated in the court's April 29 order and based on Pope's motion, the court will grant the suggested preliminary relief. The court, however, makes these additional findings. First, for the reasons set forth in the court's April 29 order and pursuant to Fed.R.Civ.P. 60(b), the defendants and Pope have established "that a significant change in circumstances warrants" a suspension of the no-bypass rule. *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 760, 116 L.Ed.2d 867 (1992). More specifically, there has been "a significant change ... in factual conditions [and] in law," *id.* at 383, 112 S.Ct. at 760; and the "proposed [preliminary] modification is suitably tailored to the changed circumstance." *Id.*

Second, the court rejects the African–American intervenors' contention that it has not made specific findings of fact and reached specific conclusions of law to support the interim relief. This order and the April 29 order provide such.

Third, the African–American intervenors have had sufficient time and opportunity to develop the record upon which the court relies. Indeed, to adopt the African–American intervenors' view, the court would essentially have to wait until all evidence has been developed, thereby de-

---

1. Two orders were entered on April 29. One contained suggested preliminary relief (Doc. No. 723), and the other set forth a framework for discovery (Doc. No. 724).

feating the necessary interim relief. As the court stated in its April 29 order, the continued implementation of the race-conscience, indeterminate, across-the-board no-bypass rule without any recent court review and re-authorization during its extended existence, is, on its face, unconstitutional.[2] By providing for only interim, rather than permanent, relief at this time, the court gives the African–American intervenors an opportunity to cure this defect, if they can; in the meantime, however, the rule simply cannot remain in effect.

 Finally, the defendants take issue with a separate, discovery order entered on April 29 directing the magistrate judge "to see if a plan can be developed for more extensive, but still quite limited, discovery."[3] They argue that "the companion discovery order will almost certainly foment future discovery disputes that could quickly overwhelm the parties and the Court."[4] The court has not unconditionally directed the magistrate judge to develop a plan for more discovery. Rather, the magistrate judge is to work with the parties to see "if" a plan can be developed. In addressing this "if," the magistrate judge should consider not only whether any additional discovery is relevant but, if so, the defendants' articulated concern as well.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of· the court as follows:

(1) The joint motion to terminate the no-bypass rule (Doc. No. 634) is treated as a motion for preliminary relief filed by defendants and said motion is granted.

(2) Plaintiff intervenor Timothy Pope's motion for preliminary relief (Doc. No. 732) is granted.

(3) Pending final resolution of the joint motion to terminate the no-bypass rule (Doc. No. 634) and the motion to modify injunction as to the no-bypass rule (Doc. No. 659), the application of the no-bypass rule is suspended, effective no later than June 20, 2005. The court assumes that the defendants need a reasonable period of time to put this suspension into effect in an orderly and fair manner.

DONE, this the 20th day of May, 2005.

---

**2.** In its April 29 order, the court said the continued need for the no-bypass rule had not been reviewed since 1970. The court was incorrect. In 1976, the no-bypass rule was extended to include other state departments and officials not included in the 1970 injunction. *United States v. Frazer*, 1976 WL 729 (M.D.Ala. Aug.20, 1976). However, the con-clusions reached by the court in its April 29 order remain unchanged.

**3.** Order entered April 29, 2005 (Doc. No. 724), at 3. *See also supra* note 1.

**4.** Defendants' response (Doc. No. 725), at 3.